UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

ABRAHAM MUSSAFI,

                    Plaintiff,              12 Civ. 2071 (JGK)

         - against -                        MEMORANDUM OPINION
                                            AND ORDER
MICHAEL FISHMAN, PRESIDENT, LOCAL
32BJ, SERVICE EMPLOYEES
INTERNATIONAL UNION, TOWNHOUSE
COMPANY, LLC c/o SOLOW MANAGEMENT
CORP., and REALTY ADVISORY BOARD ON
LABOR RELATIONS, INC.,

                    Defendants.
————————————————————————

JOHN G. KOELTL, District Judge:

     The plaintiff, Abraham Mussafi, brings this action against

Service Employees International Union, Local 32BJ ("the Union");

its president, Michael Fishman; and Townhouse Company, LLC c/o

Solow Management ("the Employer") (collectively, "the

defendants").[1]  After the Employer terminated the plaintiff's

employment, the Union filed a grievance on the plaintiff's

behalf and submitted the dispute to an arbitrator, who denied

the grievance and held that the plaintiff was discharged for

just cause.  The plaintiff then brought the present action in

the New York State Supreme Court, New York County.  The action

———————————————

[1] In his Amended Complaint, the plaintiff withdrew and
discontinued with prejudice this action as against the Realty
Advisory Board on Labor Relations.  (Am. Compl. ¶ 11.)

was removed to this Court, and the plaintiff filed an Amended Complaint alleging six causes of action.

The first cause of action alleges that the Union breached its duty of fair representation and that the Employer breached the Collective Bargaining Agreement ("CBA").  The second cause of action seeks to vacate the arbitration award due to the arbitrator's alleged partiality.  The third cause of action alleges that the arbitration proceeding violated the plaintiff's right to due process.  The fourth cause of action alleges that the plaintiff's discharge was a pretext for illegal discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq.  The fifth cause of action alleges that the plaintiff's discharge was a pretext for illegal discrimination in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.  The sixth and final cause of action alleges that the defendants' conduct caused the plaintiff to suffer emotional distress.  The Union and its president, as well as the Employer, now move to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession

or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## II.

The following facts are accepted as true for the purposes of this motion to dismiss, unless otherwise indicated.

Since in or about 2002, the plaintiff was employed as a porter and doorman at 265 East 66th Street in New York City. (Am. Compl. ¶ 1.)  At some point during his employment, personality conflicts arose between the plaintiff and his co-workers.  (Am. Compl. ¶ 2.)  The plaintiff's disciplinary history consisted of five disciplinary incidents from August 2004 through August 2010, but the plaintiff alleges that this disciplinary history was a pretext to fire him for discriminatory reasons.  (Am. Compl. ¶¶ 3-4.)  A series of events then occurred in November 2010 that led to the plaintiff's termination on November 23, 2010.  (Opinion and Award dated Nov. 30, 2011 ("Award"), Strom Decl. Ex. A, at 3-8.) After the Employer terminated the plaintiff's employment, the Union filed a grievance on the plaintiff's behalf and submitted the dispute to arbitration pursuant to the CBA between the Union and the Employer.  (Award at 1-2.)  The CBA contained provisions

establishing grievance and arbitration procedures, as well as a provision stating that discrimination claims were subject to these procedures "as [the] sole and exclusive remedy." (Weinberg Certif. Ex. C at 13-18, 95-96.)  The stipulated issue at the plaintiff's arbitration was whether the plaintiff had been discharged for "just cause."  (Award at 2.)  On November 30, 2011, the arbitrator issued an opinion and award denying the grievance and holding that the plaintiff had been discharged for just cause.  (Award at 11.)

In upholding the discharge, the arbitrator considered the plaintiff's entire disciplinary history.  (Award at 3.)  The plaintiff had incurred a number of disciplinary actions, each time for his failure to follow established rules:  on August 26, 2004, he was given a written warning; on September 2, 2005, he was suspended for one day; on October 27, 2006, he was suspended for two days; and on March 21, 2008, he was suspended for five days.  (Award at 3.)  With the intervention of the Union, the five-day suspension was reduced to three days but was accompanied by a note stating that "Mr. Mussafi understands this is a FINAL WARNING."  (Award at 3.)  More recently, on August 23, 2010, the plaintiff was given a warning for not wearing his white gloves.  (Award at 3.)

The arbitrator made the following findings regarding the November 2010 events leading up to the plaintiff's termination.

At that time, Anthony Calicchio was the executive responsible for the premises and Geovanni Bernardino was the resident manager.  (Award at 2.)  On November 15, 2010, the plaintiff responded "intemperate[ly]" when Arelis Lendeborg, the building's concierge, told him to check the basement door according to Bernardino's instruction.  (Award at 4, 10.) Lendeborg wrote an incident report to Bernardino that day, and four days later Bernardino issued the plaintiff an Employee Warning Notice termed a "2nd Warning."  (Award at 4, 5.)  On November 17, 2010, the plaintiff was given another warning for harassing doorman Danny Morales about Morales having a better schedule than the plaintiff.  (Award at 4-5.)  At a meeting that day, the plaintiff was advised to discontinue "the negative remarks towards Danny [Morales] or any other co-worker" or else face "possible suspension or termination."  (Award at 5.)

On November 20, 2010, the plaintiff ignored Lendeborg's greeting and later accused her of causing him to receive the warning notice.  (Award at 5-6.)  On the morning of November 21, 2010, Lendeborg became upset when the plaintiff continued to ignore her, and she began talking to Bernardino about the plaintiff and the hostile environment he created.  (Award at 6.) When the plaintiff saw them talking and approached them, Bernardino told the plaintiff to stop harassing Lendeborg and physically escorted him to the door.  (Award at 6.)  Shortly

after this encounter, the plaintiff called the police, who arrived within minutes, took statements, and left. (Award at 7.) Bernardino claims that the plaintiff then said "[h]e would make everything go away" if Bernardino gave him a weekday shift, but the plaintiff denies this encounter. (Award at 9.)

The plaintiff also filed an incident report with building management, stating that Bernardino "jumped on [him], grabbed [him] by the neck and pushed [him] about 15 feet to the door . . . ." (Award at 8.) However, the arbitrator found that the video capturing some of the incident (hereinafter "the lobby incident") did not support dragging or hitting, nor did he observe Bernardino's hands on the plaintiff's neck. (Award at 6-7.) According to the arbitrator, the plaintiff acknowledged on cross-examination that Bernardino had only placed his hand on the small of the plaintiff's back and that the plaintiff did not feel physically threatened at the time. (Award at 9.)

On November 22, 2010, Bernardino met with Calicchio to update him on the recent events, show him the video footage, and recommend the plaintiff's discharge. (Award at 7.) Calicchio reviewed the plaintiff's file and the several incident reports filed by the plaintiff, Lendeborg, and others. (Award at 7.) The next day, Calicchio discharged the plaintiff "for inappropriate and unacceptable conduct as a building service employee." (Award at 8.)

After reviewing the facts of the case, the arbitrator stated that the differences in the accounts of the November 15 and 17 events did not require much attention "because they were effectively resolved by [the Employer's] disciplinary action." (Award at 10.)  The real problem, according to the arbitrator, was "that Mussafi didn't stop" and instead created a hostile work environment by "continuing a campaign of hostility to[ward] Lendeborg."  (Award at 10-11.)  The arbitrator ultimately found that this conduct "satisfie[d] the just cause requirement" for discharge because "it [was] a serious violation of work place norms" and "Mussafi was on final warning."  (Award at 11.) Given this determinative finding, the arbitrator chose to "deal very summarily with the other alleged infractions that might support discharge," declining to address the alleged blackmail attempt and noting that the plaintiff's call to the police was a "foolish, spiteful and wrongful" extreme reaction to Bernardino's escorting him to the door.  (Award at 11.)


**III.**

The Union and its president, as well as the Employer, now move to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**A.**

The plaintiff's first cause of action alleges that the Union breached its duty of fair representation and that the Employer breached the CBA.  This cause of action constitutes a "hybrid" claim, which alleges that the employer breached a collective bargaining agreement in violation of Section 301(c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and that the union breached its duty of fair representation, a duty implied from Section 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a).  See DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 (1983).  "Yet the two claims are inextricably interdependent.  To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union."  Id. (citation and internal quotation marks omitted).  The Court will first consider the plaintiff's allegation against the Union, and then consider the plaintiff's allegation against the Employer.

**1.**

A breach of the duty of fair representation claim requires two showings.  First, the union's actions must have been "arbitrary, discriminatory, or in bad faith."  Air Line Pilots

Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)) (internal quotation marks omitted).  Second, the plaintiff "must then demonstrate a causal connection between the union's wrongful conduct and [his] injuries."  Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998) (citations omitted).

**a.**

With respect to the first requirement, the Supreme Court has held that "a union's actions are arbitrary only if, in the light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."  O'Neill, 499 U.S. at 67 (quoting Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953)).  Judicial review of union action "must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities."  Id. at 78.  In a subsequent case, the Court explained that "[t]his 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong."  Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45-46 (1998) (citation omitted).  Even if union action rises to the level of negligence, "mere negligence . . . would not state a claim for breach of the duty

of fair representation . . . ."  United Steelworkers of Am. v. Rawson, 495 U.S. 362, 372-73 (1990).

Here, the plaintiff's allegation that the Union breached its duty of fair representation rests on two main assertions: first, the Union allegedly failed to produce the entire unedited video recorded on November 21, 2010, which the plaintiff asserts would support his account of the lobby incident; and second, the Union allegedly failed to produce the plaintiff's requested witness to testify at the arbitration hearing.[2]  (Am. Compl. ¶ 12.1(b)-(c).)[3]  More specifically, the plaintiff alleges that the Union failed to call Mrs. Wycoff, a tenant whom the plaintiff asserts would have supported his account of the lobby incident.  (Am. Compl. ¶¶ 12.1(c), 12.2(j).)

In both respects, the plaintiff has failed to allege a plausible claim that the Union's conduct was "arbitrary, discriminatory, or in bad faith."  In Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43 (2d Cir. 1989), the Second Circuit

_____

[2] To the extent that the plaintiff faults the Union for failing to insist on recording the arbitration hearing (Am. Compl. ¶ 6), "there is nothing inherently unfair about [a] [u]nion's decision not to have a reporter present" where there is no indication of bad faith.  Arteaga v. Bevona, 21 F. Supp. 2d 198, 208 (E.D.N.Y. 1998) (citing Ciano v. Util. Workers Union, No. 94 Civ. 3423, 1995 WL 489452, at *12 (S.D.N.Y. Aug. 15, 1995) ("Plaintiff has cited no cases, and we have found none, that support his characterization of the practice of not recording arbitration hearings as a breach of the duty of fair representation.")).
[3] The plaintiff's Amended Complaint includes two ¶ 12s.  For purposes of clarification, the Court will refer to the first ¶ 12 as "¶ 12.1" and to the second ¶ 12 as "¶ 12.2."

Court of Appeals explained that "[i]n hindsight, any decision a union makes in the informal yet complex process of handling its members' grievances may appear to the losing employee to have been erroneous." Nevertheless, a union's tactical decisions about not presenting certain evidence at an arbitration hearing, even where they "might conceivably have affected the outcome of the arbitration . . . indubitably do not rise to the level of bad faith and arbitrariness." Id. Even if the decisions were indeed "errors of judgment . . . [t]actical errors are insufficient to show a breach of the duty of fair representation . . . ." Id.

In this case, the Union's decisions about presenting video evidence and whether to present a particular witness were tactical in nature. See, e.g., id. (deeming the union's failure to present Barr's witnesses at grievance meetings to be "tactical in nature"). Even if the Union presented an edited video and chose not to present Mrs. Wycoff at the arbitration hearing, the plaintiff has failed to allege plausibly that these decisions were "so egregious as to be evidence of bad faith and failure fairly to represent [him]." Id.

Moreover, the plaintiff must allege sufficient facts to support a plausible claim that the Union's conduct "seriously undermine[d] the arbitral process." Id. (quoting Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567 (1976)) (internal

quotation marks omitted).  Here, the plaintiff had a full and fair opportunity to testify at the arbitration hearing, and in the written opinion the arbitrator referred to the plaintiff's cross-examination testimony about the lobby incident.  (Award at 9.)  The Union's decision not to produce certain additional evidence does not, in itself, indicate that the Union's conduct seriously undermined the arbitral process.  See, e.g., Nicholls v. Brookdale Univ. Hosp., 204 Fed. App'x 40, 42 (2d Cir. 2006) (summary order) (affirming complaint dismissal where the plaintiff testified fully at her arbitration hearing and called three additional witnesses, and there was no indication that the union's failure to produce certain documents seriously undermined the arbitral process).  Because the plaintiff has failed to allege sufficient facts to support a plausible claim that the Union's actions were "arbitrary, discriminatory, or in bad faith" and seriously undermined the arbitral process, the plaintiff has failed to meet the first requirement for a breach of the duty of fair representation claim.

**b.**

To meet the second requirement for a breach of the duty of fair representation claim, a plaintiff must "demonstrate a causal connection between the union's wrongful conduct and [his] injuries."  Spellacy, 156 F.3d at 126 (citations omitted).  In

13

this case, the plaintiff has failed to allege any plausible
causal connection between the Union's conduct and the
arbitrator's decision rejecting the grievance.  By focusing
solely on the plaintiff's conduct prior to the lobby incident
and the hostile work environment that the plaintiff had created,
the arbitrator concluded that the plaintiff's conduct satisfied
the just cause requirement.  (Award at 10-11.)  Given that he
had already reached this determinative finding based on this
conduct alone, the arbitrator explicitly declined to rely on the
lobby incident and instead chose to "deal very summarily" with
it.  (Award at 11.)  However, the evidence that the plaintiff
claims should have been introduced—namely, the entire video and
Mrs. Wycoff's potential testimony—concerned only the lobby
incident.  (Am. Compl. ¶¶ 12.1(b), 12.1(c), 12.2(j).)  Because
the plaintiff has not alleged any causal connection between the
Union's alleged lapse in representation and the adverse
arbitration result, the plaintiff has failed to meet the second
requirement for a breach of the duty of fair representation
claim.  Therefore, the plaintiff has failed to allege a
plausible claim that the Union breached its duty of fair
representation.  Because the first cause of action requires a
showing that the Union breached its duty of fair representation
and that the Employer violated the CBA, the plaintiff's failure

14

to allege a plausible claim against the Union requires the
dismissal of the first cause of action on this basis alone.


## 2.

The plaintiff also alleges that the Employer breached the
CBA by terminating him for discriminatory reasons.  (Am. Compl.
¶¶ 23, 29.)  For the reasons explained below, the independent
claims against the Employer are barred.  In any event, because
the plaintiff has not alleged a plausible claim for breach of
the Union's duty of fair representation, the first cause of
action must be dismissed.


## B.

The plaintiff's second cause of action seeks to vacate the
arbitration award due to the arbitrator's alleged partiality.
However, this cause of action fails because the plaintiff lacks
standing to challenge the arbitration award.  "If there is no
claim that the union breached its duty of fair representation,
an individual employee represented by a union generally does not
have standing to challenge an arbitration proceeding to which
the union and the employer were the only parties." Katir v.
Columbia Univ., 15 F.3d 23, 24-25 (2d Cir. 1994) (per curiam)
(citations omitted).  Here, the Union and the Employer were the
only parties to the collective bargaining agreement.  (Award at

1-2.)  Because the plaintiff has failed to allege a plausible
claim that the Union breached its duty of fair representation,
the plaintiff lacks standing to challenge the arbitration award.

In any event, the plaintiff's main reason for challenging
the arbitration award was the arbitrator's alleged "evident
partiality" (Am. Compl. ¶ 17), as purportedly demonstrated by
"both the arbitrator's conduct at the hearing, and the demeaning
and incendiary language present in the arbitrator's decision."
(Am. Compl. ¶ 7.1.)[4]  The Second Circuit Court of Appeals has
held that "'evident partiality' within the meaning of [Section
10 of the Federal Arbitration Act] will be found where a
reasonable person would have to conclude that an arbitrator was
partial to one party to the arbitration."  Morelite Constr.
Corp. v. N.Y.C. Dist. Council Carpenters Benefit Funds, 748 F.2d
79, 84 (2d Cir. 1984).  Here, the plaintiff has proffered no
factual basis for his challenge other than his conclusory
reference to the arbitrator's conduct at the hearing and the
arbitrator's language with which he disagrees (Am. Compl.
¶ 12.2), but this is not a basis on which to allege partiality.
The plaintiff points to nothing that would require a reasonable
person to conclude that the arbitrator was partial to the

---

[4] The plaintiff's Amended Complaint includes two ¶ 7s.  For
purposes of clarification, the Court will refer to the first ¶ 7
as "¶ 7.1" and to the second ¶ 7 as "¶ 7.2."

Employer.  Therefore, the plaintiff's challenge based on the arbitrator's alleged partiality must fail.

## C.

The plaintiff's third cause of action alleges that the arbitration proceeding violated his right to due process.  Even if the plaintiff had standing to challenge the arbitration award, this challenge would also fail.  First, the plaintiff has failed to allege any state action, and due process is a requirement before liberty or property is deprived by state action.  "A threshold requirement of plaintiff's constitutional claims is a demonstration that in denying the plaintiff's constitutional rights, the defendant's conduct constituted state action."  Desiderio v. Nat'l Ass'n of Sec. Dealers, 191 F.3d 198, 206 (2d Cir. 1999) (citing United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)).  This case is a purely private dispute involving no state action, and therefore constitutional due process principles are not applicable here.

Moreover, the plaintiff has failed to allege facts to support a plausible claim that he was deprived due process.  The plaintiff plainly had notice of his discharge, and the Union filed a grievance on his behalf and represented him at the arbitration.  (Award at 1-2.)  The plaintiff had a full and fair opportunity to testify at the arbitration hearing, and in the

written opinion the arbitrator referred to the plaintiff's
testimony about the lobby incident.  (Award at 9.)  The
plaintiff specifically alleges that "the arbitration proceeding
itself is a violation of due process" because "there is no tape,
transcription or other official memorial" of the arbitration
hearing "so that there is no record for any court to review."
(Am. Compl. ¶ 6.)  However, where there is no indication that a
union's failure to have the arbitration hearing recorded was the
result of bad faith, "there is nothing inherently unfair about
the Union's decision not to have a reporter present."  Arteaga
v. Bevona, 21 F. Supp. 2d 198, 208 (E.D.N.Y. 1998) (citation
omitted).  Accordingly, there is no merit to the plaintiff's
third cause of action.


### D.

     The plaintiff's fourth cause of action alleges that his
discharge was a pretext for illegal discrimination in violation
of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.,
and the ADEA, 29 U.S.C. § 621 et seq.  This cause of action
against the Employer fails for at least two reasons.

     First, the plaintiff has failed to exhaust his
administrative remedies pursuant to the CBA.  An employee is
generally "required to attempt to exhaust any grievance or
arbitration remedies provided in the collective-bargaining

agreement" before bringing suit against his employer for breach of a collective bargaining agreement. DelCostello, 462 U.S. at 163 (citing Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965)). In this case, the CBA provided that with respect to "claims made pursuant to Title VII of the Civil Rights Act . . . the Age Discrimination in Employment Act . . . the New York State Human Rights Law, the New York City Human Rights Code, or any other similar laws . . . [a]ll such claims shall be subject to the grievance and arbitration procedure (Articles V and VI) as sole and exclusive remedy for violations." (Weinberg Certif. Ex. C at 95-96.) There is no evidence in the record that the plaintiff exhausted the available grievance and arbitration procedures with respect to these discrimination claims. Because the plaintiff has failed to exhaust his administrative remedies pursuant to the CBA with respect to his Title VII and ADEA claims, his fourth cause of action must be dismissed.

Second, the plaintiff was required under both Title VII and the ADEA to exhaust his administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before bringing a civil action. See 42 U.S.C. § 2000e-5(e)-(f); 29 U.S.C. § 626(d). In New York, such a charge must be brought within 300 days of the alleged discriminatory events. See 42 U.S.C. § 2000e-5(c); Dezaio v. Port Auth. of N.Y. & N.J., 205 F.3d 62, 65 (2d Cir. 2000). A

subsequent civil action must be brought within ninety days of
notice that the charge has been dismissed.  See 42 U.S.C.
§ 2000e-5(f)(1); 29 U.S.C. § 626(e).  Here, the plaintiff did
not allege that he filed a charge of discrimination with the
EEOC before bringing this civil action, and indeed his counsel
conceded at the argument of the current motions that the
plaintiff had failed to file such a charge.  Therefore, the
plaintiff's fourth cause of action alleging discrimination in
violation of Title VII and the ADEA must be dismissed.


**E.**

The plaintiff's fifth cause of action alleges that his
discharge was a pretext for illegal discrimination in violation
of the New York State Human Rights Law, N.Y. Exec. Law § 296,
and the New York City Human Rights Law, N.Y.C. Admin. Code
§ 8-107.  This cause of action against the Employer also must be
dismissed because the plaintiff failed to exhaust his
administrative remedies pursuant to the CBA.  In this case, the
CBA provision stating that discrimination claims were subject to
the established grievance and arbitration procedures "as [the]
sole and exclusive remedy" included discrimination claims made
pursuant to state and city human rights laws.  (Weinberg Certif.
Ex. C at 95-96.)  Here, there is no evidence in the record that
the plaintiff exhausted the available grievance and arbitration

procedures with respect to these discrimination claims.[5]  Because
the plaintiff has failed to exhaust his administrative remedies
pursuant to the CBA with respect to his state and city law
claims, his fifth cause of action must be dismissed.  See Allis-
Chalmers Corp. v. Lueck, 471 U.S. 202, 220-21 (1985) ("The
complaint should have been dismissed for failure to make use of
the grievance procedure established in the collective-bargaining
agreement . . . .") (internal citation omitted).


F.

The plaintiff's sixth and final cause of action alleges
that the defendants' conduct caused him to suffer emotional
distress.  Counsel for the plaintiff clarified at the argument
of the current motions that the sixth cause of action is a claim
against both the Union and the Employer for the intentional
infliction of emotional distress ("IIED").

With respect to the Union, the plaintiff has failed to
allege sufficient facts to support a plausible IIED claim.
"[A]s a remedy for a breach of the union's duty of fair
representation, the union may not be required to pay damages for
the infliction of emotional distress unless its conduct has been

---

[5] Nonetheless, both the Union and the Employer advised at the
argument of the current motions that there remain open avenues
under the CBA for the plaintiff to pursue any state law
discrimination claims that are not otherwise time-barred.

truly outrageous." Baskin v. Hawley, 807 F.2d 1120, 1133 (2d Cir. 1986).  Even if the Union had breached its duty of fair representation here, the plaintiff has not alleged any "truly outrageous" conduct on the part of the Union.

Similarly, with respect to the Employer, the plaintiff has failed to allege sufficient facts to support a plausible IIED claim.  In New York, "[t]he state law tort of intentional infliction of emotional distress has four elements:  (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996) (citing Howell v. New York Post Co., 612 N.E.2d 699, 702 (N.Y. 1993)).  Here, the plaintiff has not even begun to allege sufficient facts to support a plausible claim that these elements have been met.

Because the plaintiff has not alleged sufficient facts to support a plausible IIED claim against either the Union or the Employer, the plaintiff's sixth cause of action must fail.  See Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 570.  The sixth cause of action is dismissed with prejudice, given that the plaintiff has already filed an Amended Complaint and has not sought leave to amend.

**G.**

In addition to suing the Union, Local 32BJ, the plaintiff has also named the Union's president, Michael Fishman, as a defendant in this suit.  The plaintiff has failed to allege any specific acts on the part of the Union's president that would subject him to liability.  In any event, union agents are not personally liable to third parties for acts performed on the union's behalf.  See Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 247-49 (1962) (noting that union agents and members are exempt from personal liability for judgments against the union), overruled on other grounds by Boys Mkts., Inc. v. Retail Clerks Union, Local 779, 398 U.S. 235 (1970).  The Second Circuit Court of Appeals has held that this principle applies to suits for the breach of the duty of fair representation.  Morris v. Local 819, 169 F.3d 782, 784 (2d Cir. 1999) (per curiam) ("We now join the other circuits that have considered the issue and hold that 29 U.S.C. § 185(b) and the caselaw provide a shield of immunity for individual union members in suits for breach of the duty of fair representation.") (citations omitted).  Therefore, the claims against the Union's president, Michael Fishman, must be dismissed.

## CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the foregoing reasons, the defendants' motions are **granted**.  The Clerk is directed to enter Judgment dismissing the Amended Complaint and closing this case.  The Clerk is also directed to close Docket Nos. 6, 9, 15, and 18.

SO ORDERED.

Dated:     New York, New York
           November 12, 2012

                              John G. Koeltl
                          United States District Judge

24